UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DELORES HUMES, an individual; and DIANE ABELLA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>FIRST STUDENT, INC., and DOES 1 through 100, inclusive.<br><br>Defendants. | Case No.: No. 15-cv-1861-BAM<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>(Doc. No. 33)<br><br>**ORDER SETTING TELEPHONIC STATUS CONFERENCE** |

## I.  INTRODUCTION

Plaintiff Delores Humes and Diane Abella ("Plaintiffs"), individually and on behalf of all others similarly situated, filed a class action complaint against Defendant First Student, Inc. ("Defendant" or "First Student") and various Doe defendants in Fresno County Superior Court on October 28, 2015. The matter was removed to this Court on December 11, 2015.[1]

Plaintiffs now move for class certification pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3).  (Doc. 30.)  A hearing was held on July 7, 2017, before the Honorable Barbara A. McAuliffe.  Counsel Carol Gillam appeared on behalf of Plaintiffs Delores Humes and Diane Abella.  Counsel David Dow and Irene Fitzgerald appeared on behalf of First Student

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 13, 14). For that reason, the action was reassigned to the Honorable Barbara A. McAuliffe for all purposes. See 28 U.S.C.§ 636(c); Fed. R. Civ. P. 73; see also L. R. 301, 305.  (Doc. 15).

1

Inc. Having considered the moving, opposition and reply papers and the parties' arguments, Plaintiffs' Motion for Class Certification shall be DENIED.

## II.     BACKGROUND

**A.     Factual and Procedural Background**

First Student is a transportation company providing school bus services to school districts across the country, including Fresno, California. (Doc. 33, p. 4.) From its Fresno location ("Fresno Yard"), First Student provides bus service for both special education students and traditional school bus routes. The Fresno Yard also provides charter services. (Id.)

Plaintiff Delores Humes was formerly employed by First Student as a bus driver out of its Fresno Yard. Plaintiff Diane Abella is currently employed by First Student as a bus driver out of its Fresno Yard. Plaintiffs contend that during their employment, First Student failed to pay its bus drivers for all time worked, including all time that the drivers were subject to First Student's control.

Plaintiffs initially filed this action in the Fresno County Superior Court. (Plaintiffs' Complaint, Doc. 1-1.) On December 11, 2015, First Student removed the case to this Court based on federal question jurisdiction and the Class Action Fairness Act, 28 U.S.C. § 1332(d). (Doc. 1.) Plaintiffs' class action complaint alleges that First Student: (1) failed to pay regular wages in violation of Labor Code §§ 201-203 (unpaid wages); (2) failed to pay wages within the time allowed in violation of Labor Code § 204 (untimely wages); (3) failed to pay minimum wage in violation of Labor Code §§ 1194, 1194.2, 1198 and IWC Wage Order No. 9-2001 (minimum wage); (4) failed to provide accurate itemized statements in violation of Labor Code §226 (inaccurate wage statements); (5) violated Business and Professions Code §17200 *et seq*. with unlawful, unfair, and fraudulent business practices; and (6) breached an oral contract. (Doc. 1-1; Compl., pp. 11-19.)

Plaintiffs moved for class certification on December 23, 2016. (Doc. 30.) First Student opposed the motion on March 24, 2017, and Plaintiffs replied on June 15, 2017.[2] (Docs. 33, 34.)

**B.      Proposed Class**

Plaintiffs move to certify the following class:

> All current and former bus drivers who were employed by First Student at its Fresno Yard located at 2805 South East Avenue in Fresno, California since October 28, 2011 to the present.

(Doc. 31, p. 2.)

Alternatively, Plaintiffs seeks to certify the following classes:

> (1) <u>Unpaid Wages Class</u>: Plaintiffs and all other persons who were employed by Defendant as school bus drivers at Defendant's Fresno, California yard, at any time from October 28, 2011, and continuing to the present who were not paid all wages due by Defendant.
>
> (2) <u>Untimely Wages Class</u>: Plaintiff and all other persons who were employed by Defendant as school bus drivers at Defendant's Fresno, California yard, at any time from October 28, 2011, and continuing to the present who were not paid wages due by Defendant on a timely basis.
>
> (3) <u>Minimum Wages Class</u>: Plaintiff and all other persons who were employed by Defendant as school bus drivers at Defendant's Fresno, California yard, at any time from October 28, 2011, and continuing to the present, who were not paid at least minimum wages for work performed for Defendant.
>
> (4) <u>Inaccurate Wage Statement Class</u>: Plaintiff and all other persons employed by Defendant as school bus drivers at Defendant's Fresno, California yard, at any

---

[2]      Plaintiffs request that the Court take judicial notice of documents and attached exhibits in connection with the motion for class certification. (Doc. 30; Exs. 21, 22 and 23.) In particular, Plaintiffs ask the Court to take judicial notice of a judicial opinion filed in other proceedings (Ex. 21), the Collective Bargaining Agreement in effect at First Student's Fresno Yard between July 1, 2012 and June 30, 2015 (Ex. 22), and a copy of California Code of Regulations, Title 13, Section 1215 "Vehicle Condition" (Ex. 23). First Student has not opposed the request

With respect to the judicial opinion and state regulations, the Court may take notice of facts not subject to reasonable dispute that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Court also may take judicial notice of matters of public record, including opinions of other courts. <u>See</u> <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 689 (9 th Cir. 2001); <u>see also</u> <u>Murray v. Sears, Roebuck & Co.</u>, No. 09-cv-05744 CW, 2010 WL 2898291, at *1 n.1 (N.D. Cal. Jul. 21, 2010) (in class action, court took judicial notice of court orders in another court involving similar allegations).

With respect to the Collective Bargaining Agreement, generally such a document is not subject to judicial notice. In this instance, however, First Student has not objected to the request for judicial notice, and First Student's own briefing relies on three Collective Bargaining Agreements in effect for multiple time periods, not just the July 1, 2012 to June 30, 2012 period. Accordingly, in the absence of any objection, Plaintiffs' unopposed request for judicial notice is HEREBY GRANTED. The Court will take judicial notice of the Collective Bargaining Agreement, along with the judicial opinion from another court and the California regulations.

time from October 28, 2011, and continuing to the present who were provided with inaccurate wage statements by Defendant.

(Id.)

## C.     Overview of First Student's Operations at the Fresno Yard

From the Fresno Yard, First Student provides bus service for special education students, who are picked up and dropped off at their homes, and for traditional bus routes, where the bus picks up and later drops off a number of students at designated bus stops. (Doc. 33, p. 4.)  The Fresno Yard also provides charter services, such as transporting students to field trips, sporting events or amusement activities like the beach or amusement parks. (Id.)

At the time of hire and annually thereafter, bus drivers are provided with copies of First Student's National Handbook. (Doc. 33-1, Declaration of Sharon Murphy ("Murphy Decl."), ¶ 4 and Ex. A.) The National Handbook includes general company-wide policies; however, those policies are superseded by any Collective Bargaining Agreement ("CBA") that may be in place. (Id.) All drivers at the Fresno Yard are subject to a CBA, and have been since 2007. (Id. at ¶ 5.) The CBAs include provisions relating to hours worked, hourly wage rates, guaranteed hours and how drivers are to be paid. (Id. and Exs. B, C and D.) The CBAs have grievance-arbitration provisions permitting drivers to pursue claims for unpaid wages. (Exs. B, C and D to Murphy Decl.). Under the CBAs, drivers are guaranteed a certain number of hours of pay per day even if they work less than the guaranteed number of hours. (Id.) Drivers who have both an a.m. and p.m. route are guaranteed four hours of pay if they work both portions of their shift. (Murphy Decl. ¶ 6.) Drivers who are also scheduled for a midday route are also guaranteed four hours of pay. (Id.) Cover drivers are guaranteed six hours of pay per day, except during the summer school season, when they are guaranteed four hours. (Id. at ¶ 7.)

If a driver completes his or her work in less than the guaranteed hours, the driver is still paid the full hours guarantee. (Id. at ¶ 6.) The driver can be required to work for the guaranteed number of hours, such as by doing filing work after completing his or her route, but almost always the driver is permitted to leave and is still paid the full hours guarantee. (Id.)  In

4

1  contrast, if the actual work time exceeds the hours guarantee, drivers are paid for additional time
2  reported.  (Id.)

3        Most drivers are assigned to drive either a special education or a regular school bus
4  "home-to-school" route.  (Murphy Decl. at ¶¶ 7, 9.)  Some drivers also work as "cover drivers"
5  where they do not have a permanent route, but fill-in for absent drivers.  (Id.)

6        A Route Schedule is developed based on the pickup and drop off times for the student,
7  the amount of time it should take to drive to and from the Fresno Yard and the school or first
8  stop of the route and the amount of time allocated for performing pre- and post-trip inspections
9  of the buses, cleaning the buses, filling out paperwork during the route, and walking to and from
10 the location office and the buses.  (Id. at ¶¶ 10-11.)  The Route Schedules are then used to
11 develop the drivers' work schedules, which delineate the time drivers are to report work and the
12 time drivers will end their shift.  (Id.)  The Route Schedules are created at the beginning of the
13 year, but are updated continuously throughout the year.  (Id.)  The Route Schedules also are
14 subject to adjustment if the actual time it takes to drive the route is longer or shorter than
15 originally expected.  (Id.)  As a result, each driver's scheduled start and end time may change
16 throughout the school year.  (Id.)  Further, each bus route has a different scheduled start and
17 stop time, which depends on the location and length of the route and other factors, and drivers
18 are scheduled to work different lengths of time.  (Id.)  Drivers bid on routes at the beginning of
19 each school year and summer school, and drive the same route during that time.  (Id. at ¶ 5.)

20       Prior to the start of the 2015-16 school year, drivers filled out a Daily Bus Report
21 ("DBR") form on which the drivers were to report the time they reported to the dispatch desk at
22 the beginning of their shift and the time they returned the keys to the dispatch office.  (Id. at ¶
23 13.)

24       At the beginning of the 2015-16 school year, drivers were instructed to fill out a billing
25 sheet, but these were used for billing the school district, not for payroll.  (Id. at ¶ 14.)  Drivers
26 no longer manually report their hours of work unless they go beyond their scheduled hours.
27 (Id.)  In that instance, drivers report their extra hours in an "exception log," which is located at
28 the dispatch desk.  (Id.)  Drivers put down their actual hours and a brief description of the

reason they went beyond their scheduled hours. (Id.) This includes any time over the route standard, including for traffic accidents, breakdowns or maintenance issues, and fueling. (Id.) Drivers also may fill out an "extra work" log to record when they spend extra time doing non-driving related tasks, such as washing buses and fueling. (Id.) Drivers are to be paid for time spent performing tasks that are not part of their regular routes through this exception log process. (Id.)

### a. Driving Tasks

When drivers first arrive at the bus, they are to "swipe in," and also "swipe out" at the end of their shift using "ZONAR," a system that includes a hand-held device used to record certain tasks. (Id. at ¶ 15.) GPS data is also recorded for each bus through "FOCUS" software. (Id.) Drivers are sometimes called in to discuss the time they report when, for example, there is a discrepancy to their reported time and the time recorded on ZONAR, but drivers are still to be paid for their reported time and are also paid for time spent meeting with managers if they report the time on the exception log, including time waiting to meet with managers. (Id.)

### b. Non-Driving Tasks

Drivers also are required to perform certain non-driving tasks. Drivers are required to conduct a pre-trip inspection on their buses before leaving the yard, and a post-trip inspection when they return to the yard. (Id.) Drivers also must keep the inside of their bus clean by sweeping, picking up trash, etc. (Id.) Under the CBAs, drivers are allocated twenty (20) minutes per day for completing these tasks. (Murphy Decl. ¶ 5, Exs. B, C, D.) For all of these tasks, drivers are required to report this time and they are to be paid. (Murphy Decl. at ¶ 15.)

Under the CBAs, drivers also are provided one hour of washing their bus every two weeks. (Id. at ¶ 22.) Drivers are informed of this requirement through the CBA as well as a sign at the location. Drivers report this time on the exception log or the extra work log, and are paid for that time. (Id.)

Drivers also are required to fuel their buses. (Id. at ¶ 20.) Drivers are allotted ten (10) minutes to fuel their buses, and are instructed to be swiped into the ZONAR system while they

6

fuel and to report this time on the exception log. (Id.) If drivers take longer than the ten minutes and they report that additional time, they are to be paid for that time. (Id.) Beginning in the 2015-16 school year, a fueling schedule was established based on drivers' last names.

Additionally, drivers attend mandatory and non-mandatory meetings. (Id. at ¶ 24.) Drivers are paid for their time attending mandatory meetings. Drivers sign in on a sheet at the meeting, which typically lasts an hour, but if it is longer than an hour, drivers are to be paid for the entire meeting. (Id.) Drivers are not paid for attending non-mandatory meetings. (Id. at ¶ 25.)

### III.   DISCUSSION

Plaintiff seeks class certification for current and former bus drivers employed at First Student's Fresno Yard since October 28, 2011 to the present. Plaintiffs argue that the proposed class meets the certification requirements of Rule 23(a), including numerosity, commonality, typicality and adequacy; and the certification requirements of 23(b), including that common questions of law and fact predominate and that class treatment is superior.

**A. Legal Standard Under Federal Rule of Civil Procedure 23**

Class certification of Plaintiffs' claims is governed by Federal Rule of Civil Procedure 23. Whether or not to certify a class is within the discretion of the Court. United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Service Workers Int'l Union, AFL–CIO CLC v. ConocoPhillips Co., 593 F.3d 802, 807 (9th Cir. 2010).

A class may be certified only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). These requirements are "commonly referred to as the numerosity, commonality, typicality, and adequacy requirements." Norris–Wilson v. Delta–T Group, Inc., 270 F.R.D. 596, 601 (S.D.Cal. 2010). Plaintiffs bear the burden of establishing that all four requirements of Rule 23(a) are met. Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997) (plaintiff bears burden of affirmatively satisfying each element of the Rule 23 analysis).

In addition to the requirements imposed by Rule 23(a), Plaintiff bears the burden of demonstrating that the class is maintainable pursuant to Rule 23(b).  Narouz v. Charter Commc'ns, LLC, 591 F.3d 1261, 1266 (9th Cir. 2010).  In this case, Plaintiffs seek certification of the Class under Rule 23(b)(3).  To certify a class under Rule 23(b)(3), Plaintiffs must demonstrate: (1) "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Rule 23 is not a mere pleading standard.  "A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011) ("Dukes") (emphasis in original).  When considering a motion for class certification, a court must conduct a "rigorous analysis" to determine "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."  Id. at 350-51 (citation omitted); Ellis v. Costco Wholesale Corp., 657 F.3d 970, 980 (9th Cir. 2011).

### 1. Rule 23(a) Requirements

#### a. Numerosity

Rule 23(a)(1) requires the proposed class to be so numerous that joinder of all of the class members would be impracticable. Fed. R. Civ. P. 23(a). "'[I]mpracticability' does not mean 'impossibility,' but only the difficulty or inconvenience in joining all members of the class." Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, 913–14 (9th Cir. 1964) (quoting Advert. Specialty Nat'l Ass'n v. Fed. Trade Comm'n, 238 F.2d 108, 119 (1st Cir.1956)). Additionally, the exact size of the class need not be known so long as "general knowledge and common sense indicate that it is large." Perez-Funez v. Dist. Dir., 611 F.Supp. 990, 995 (C.D. Cal. 1984).

First Student does not dispute that Plaintiffs have met the numerosity requirement, and the Court finds this requirement is met. While the exact size is unknown, Plaintiffs represent

8

that First Student "has provided a class list consisting of at least 428 drivers of the Fresno Yard." (Doc. 30 at p. 23.) Thus, the Court finds that the numerosity requirement is satisfied here.

### b. Commonality

Rule 23(a)(2) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Historically, this requirement has "been construed permissively," and "[a]ll questions of fact and law need not be common to satisfy the rule." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). Although "any competently crafted class complaint literally raises common questions," commonality "requires the plaintiff to demonstrate that the class members have suffered the same injury." Dukes, 564 U.S. at 349-50. "What matters to class certification ... is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." Id. at 350 (internal citations omitted). A class claim "must depend upon a common contention ... of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id. In assessing commonality, a court's rigorous analysis may entail some overlap with the merits of the plaintiff's underlying claim, and class determinations generally involve "considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." Id. at 351.

Here, proof of commonality necessarily overlaps with the merits of Plaintiffs' claim that First Student pays its drivers "a flat rate rather than for their actual hours worked." (Doc. 30 at p. 13.) The crux of the inquiry, as framed by Plaintiffs, is whether former and current drivers "suffered the same unlawful flat rate scheme whereby First Student failed to accurately record and pay its drivers for all hours worked." (Doc. 30 at p. 29.) Plaintiffs assert that drivers are "paid a pre-determined flat rate regardless of actual time worked, based on a Route Standard (or Route Schedule) with pre-determined designations of times of how long it should take a driver to complete their assigned route under ideal conditions." (Doc. 30 at p. 12.) Plaintiffs contend that these Route Standards do not account for various contingencies, such as late or missing

students, traffic, inclement weather, breakdowns or other bus maintenance. Plaintiffs also assert that time for pre-trip work (safety inspections, pre-trip paperwork) and non-driving tasks (cleaning the bus, fueling, breakdowns), along with walking to the bus in the morning and walking back to office following conclusion of the afternoon route, are given a default amount of time. Plaintiffs argue that because First Student "paid its drivers a flat rate rather than for their actual hours worked, and because the flat rate did not account for all work performed, First Student's bus drivers regularly worked hours for which they were not paid." (Doc. 30 at p. 13.)

In opposition, First Student's principal challenge is to Plaintiffs' theory of liability. First Student argues that there is no evidence supporting a "piece-rate" or "flat-rate" compensation system, and asserts that the practice at the Fresno Yard is that drivers are scheduled to work a set number of hours based on the anticipated time to drive their route and complete various non-driving work tasks and if they exceed those hours they report the additional hours of work and are paid for the time (or the hours guarantee if their actual hours of work are less than the guarantee). (Murphy Decl. at ¶¶ 13-17, 21.)

First Student further argues that Plaintiffs' theory already has been rejected by another district court in Vasquez v. First Student, Inc., No. 2:14-CV-06760-ODW(Ex), 2015 WL 1125643 (N.D. Cal. Mar. 12, 2015). (Doc. 33 at pp. 17-18.) In Vasquez, the court denied class certification in an action against First Student alleging causes of action for failure to pay minimum wages for all hours worked based on allegations of off-the clock work by class members, failure to provide accurate written wage statements based on failure to pay for the alleged off-the-clock work, failure to timely pay all final wages based again on the alleged off-the-clock work, unfair competition based on the alleged off-the-clock work, rest period violations and civil penalties. Id. at *3.

In analyzing the predominance requirement of Rule 23(b)(3),[3] the Vasquez court was not persuaded by the argument that First Student used a "piece-rate plan" to compensate its drivers.

---

[3] The Vasquez court found First Student's commonality arguments to be "better addressed in analyzing the predominance requirement of Rule 23(b)(3)." Vasquez, 2015 WL 1125643, at *6. Here, the Court finds the merits of Plaintiffs' underlying theory to overlap with both proof of commonality and predominance. As expressed by the Supreme Court in Dukes, the class determination "generally involves considerations that are enmeshed in the

Id. at *7.  Instead, the court determined that although drivers were allocated set hours for each task under First Student's plan, drivers had the opportunity to correct the schedule with the actual hours worked if there were any discrepancies.  The court likened this system to when an employee is assigned a specific shift and reasoned as follows:

> For example, if an employee is scheduled to work from 5 p.m. to 10 p.m., the default payment is for five hours of work.  If the employee works beyond that time period, then he or she must notify the employer that more time was worked and that he or she needs to be compensated.

Id.  The court further noted that drivers were paid varying hourly wages based on seniority.  Id.  As a result, the court concluded that "although there may be default hours for specific tasks, the Drivers are not paid a single rate based on the task itself, but rather his or her hourly wage rate for the number of hours worked."  Id.  The court distinguished First Student's compensation plan from cases relied upon by the plaintiff, all of which involved compensation plans where the employers paid a fixed-rate amount for completing specified tasks.  Id.

While the Vasquez court acknowledged that there might be discrepancies in First Student's compensation system, those discrepancies could not be resolved on a class-wide basis.  In order for the plaintiff to show that a piece-rate system was in place to prove liability, the court believed "an individualized inquiry would have to be conducted to determine (1) whether Drivers actually worked more than the time allocated for each task on a given day; (2) whether Drivers filled out an exception form to indicate he or she had worked more hours; and (3) whether Drivers were paid for the extra time worked."  Id.

In this case, the Court does not find a basis to depart from the Vazquez court's reasoned analysis regarding First Student's compensation system.  Plaintiffs do not mention, much less dispute, the findings of the Vasquez court.  Indeed, Plaintiffs have not adequately explained, either in their moving papers or at oral argument, why the Vasquez analysis of First Student's compensation system should not apply in the instant case.  Plaintiffs instead rely on the Los

---

factual and legal issues comprising the plaintiff's cause of action," and proof of commonality may necessarily overlap with a plaintiff's merits contention.  Dukes, 564 U.S. at 351-52.

Angeles Superior Court's class certification determination in <u>Tyrer v. First Student, Inc.</u>, No. BC459305, issued on June 25, 2014. (Doc. 16-4; Doc. 30-2, Plaintiffs' Ex. 21.)

Plaintiffs' reliance is misplaced. The state court decision in <u>Tyrer</u> did not apply federal class certification standards to assess issues of commonality, predominance and superiority nor did it address the viability of Plaintiff's theory that First Student used a piece-rate or flat-rate compensation system. The state court in <u>Tyrer</u> described First Student's compensation system as follows:

> In many situations, the employers' default position regarding compensation was to pay its employees a pre-determined amount for most if not all of the elements of their normal work-day (e.g. the pre and post-trip inspections and the time spent actually driving a bus route), and to allow employees to ask for time adjustments when traffic, mechanical failures or other exigent circumstances meant that the pre-determined time budget in the default assumptions did not cover the actual time spent on a task.

(Doc. 16-4 at p. 46; Doc. 30-2, Plaintiffs' Ex. 21.) However, the court's discussion did not include a finding that First Student employed a true piece-rate or flat-rate compensation system. Moreover, the <u>Tyrer</u> court's assessment that "some employees readily and easily availed themselves of the chance to ask for time adjustments and that other employees . . . found it too much trouble to make such requests" comports with the <u>Vasquez</u> court's determination that individual issues predominate and such discrepancies in compensation cannot be resolved on a class-wide basis. <u>Vasquez</u>, 2015 WL 1125643, at *7.

Plaintiffs also contend that "the question of whether First Student's pay policies fail to compensate for all time worked, and whether such failure is unlawful, are common questions of law and fact" and "[t]he answers will drive the resolution of this case." (Doc. 34 at p. 8.) In support, Plaintiffs rely on <u>Taylor v. FedEx Freight, Inc.</u>, 2015 WL 2358248, at *7 (E.D. Cal May 15, 2015). <u>Taylor</u>, however, involved allegations of "a uniform piece-rate compensation policy that fail[ed] to separately compensate truck drivers for required activities." <u>Id.</u> at *15. In contrast to <u>Taylor</u>, while First Student sets pre-determined or default amounts for each activity in its drivers' work days, its drivers are not precluded from seeking adjustments based on actual time spent on those activities. According to evidence presented here, prior to the 2015-16

school year, drivers could report all time spent on driving and non-driving activities on their DBR form and, beginning with the 2015-16 school year, could record time exceeding pre-determined or default times on the exception log or extra work log.

Critically, Plaintiffs do not dispute that First Student has procedures for drivers to report times that exceed those set for routes or other non-driving activities, such as fueling.  See, e.g., Doc. 30 at pp. 14.  Instead, Plaintiffs argue that First Student "promotes a work culture where the reporting of actual hours of work is heavily discouraged" and the use of the exception log "is usually a fruitless exercise" because "even when drivers submitted Extra Work Forms or recorded [excess time] in the Exception Log, they were still not paid."   (Doc. 30 at p. 19.)  Despite this assertion, Plaintiffs do not provide evidentiary support for the broad-sweeping proposition that all drivers who reported additional time exceeding Route Standards or default times were not compensated for this additional time.

The parties have submitted substantial contradictory evidence, including deposition excerpts and supporting declarations, clearly demonstrating the absence of a common or uniform policy of failing to compensate drivers for additional time reported on a DBR, exception log or extra work form.  For example, Plaintiffs submitted evidence that drivers were not paid for additional time reported on the DBR or exception log.  See Doc. 30-1, Declaration of Darla Gajiola at ¶¶ 5-6; Declaration of Delores Humes at ¶ 34; Declaration of Jerri K. Levy at ¶¶ 10, 14, 16; Declaration of Anthony Loring at ¶ 7; Declaration of Seferino Sauceda at ¶ 12; Declaration of Albert C. Trujillo, Jr. at ¶ 6 (DBR), ¶ 15.  Plaintiffs also submitted evidence that drivers were directed to change the times reported or that hours were reduced to conform to First Student's default times.  See Doc. 30-1, Declaration of Fawnda M. Cole at ¶ 13; Declaration of Lucina Cortez at ¶ 10; Declaration of Delores Humes at ¶ 31; Declaration of Carla McClain at ¶ 16.

First Student, however, submitted evidence supporting its position that First Student pays for all hours worked, including time reported on the DBR or exception log.  See Doc. 33-1, Declaration of Alberto Avila at ¶¶ 6, 7, 11, 14; Declaration of Araceli Mejorado at ¶¶ 10, 12, 15; Declaration of Doug Jackson at ¶¶ 4 -6, 8, 9, 11, 12; Declaration of Hang Yang at ¶¶ 3, 6, 7, 12;

Declaration of Jeannette Zavala at ¶¶ 5, 6, 9-13; Declaration of Joyce Kennedy at ¶¶ 5, 7, 9-13. Even certain of Plaintiffs' supporting declarations do not indicate that First Student commonly failed to pay drivers for extra time reported. See Doc. 30-1, Declaration of Betty A. Brumfield (no assertion that she reported extra time for which she was not paid); Declaration of Connie Clugston at ¶¶ 12, 17 ("Any and all extra work had to be logged or I wouldn't get paid for it."); Declaration of Laura Gaitan at ¶ 8; Declaration of Jessica Mahoney; Declaration of Sharon Munoz. Given these discrepancies, Plaintiffs have not proffered sufficient evidence that the compensation policy about which they complain was commonly applied to all class members. Plaintiffs have failed to identify uniform policies and systemic practices that apply uniformly to this class of employees.

### c. Typicality

In order to meet the typicality requirement, Rule 23(a)(3) requires the claims or defenses of the representative parties be typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). The purpose of Rule 23(a)(3) is "to assure that the interest of the named representative aligns with the interests of the class." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir.1992). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" Id.

Plaintiffs argue that their claims are typical of those of the proposed class because "they arise from the same course of conduct and rely upon the same legal theories" and '[t]hey have been subjected to the same policies and de facto procedures dictating their compensation by Defendant[ ] paying a set amount of wages per day and resisting class members' efforts to gain additional compensation for work performed beyond their daily guarantees." (Doc. 30 at p. 26.)

As discussed above, Plaintiffs have failed to present evidence that First Student pays drivers based on flat-rate compensation system or that First Student routinely fails to pay drivers for all hours worked. Given the discrepancies between drivers' experiences, including payment discrepancies between Plaintiffs' own declarants, there is no indication that Plaintiffs have

suffered the same or similar injuries as all class members. The Court therefore finds that Plaintiffs have not met the typicality requirement.

### d. Adequacy of Representation

Rule 23(a)(4) provides that the court may certify a class only if "the representative parties will fairly and adequately protect the interests of the class." This factor requires that (1) the proposed representatives do not have conflicts of interest with the proposed class, and (2) that the representatives and their counsel will vigorously prosecute the action on behalf of the class. Hanlon, 159 F.3d at 120.

In opposing class certification, First Student contends that neither counsel nor Plaintiff Delores Humes are adequate representatives, and they have failed to satisfy the "adequacy" prerequisite of Rule 23. Given the Court's findings regarding commonality and typicality, the Court finds it unnecessary to address First Student's adequacy arguments.

### 2. Rule 23(b)(3) Requirements

Under Rule 23(b)(3), Plaintiffs must satisfy two requirements: predominance and superiority. First, the common questions of law or fact must "predominate" over any individual questions. While this requirement is similar to the Rule 23(a)(2) commonality requirement, the standard is much higher. Dukes, 564 U.S. at 359; Amchem, 521 U.S. at 624-25 (predominance criterion far more demanding that Rule 23(a)'s commonality requirement.) Rule 23(b)(3) requires convincing proof that the common questions "predominate." Amchem, 521 U.S. at 623-24. The Rule 23(b)(3) predominance inquiry "tests whether proposes classes are sufficiently cohesive to warrant adjudication by representation." Id. at 623.

### a. Predominance

In arguing that the issues are the same for all putative class members, Plaintiffs assert that "[f]ormer and current school bus drivers all suffered the same unlawful flat rate scheme whereby First Student failed to accurately record and pay its drivers for all hours worked." (Doc. 30 at p. 29.) However, as discussed above, Plaintiffs' flat-rate theory of liability is unsupported.

Even if the Court accepted Plaintiffs' assertion that drivers were not paid for actual time reported on the DBR, exception log or extra work log, any liability determination based on pay discrepancies would require an individualized inquiry to determine (1) whether drivers worked more than the times allocated for each task on a given day; (2) whether drivers reported additional time on a exception form to indicate he or she had worked more hours; and, more importantly, (3) whether drivers were paid for the extra time worked. Vasquez, 2015 WL 1125643, at *7. As noted above, the evidence is all over the board. The individualized inquiries as to non-payment would swap the minimal common question (the Route Schedule) because the evidence demonstrates that each driver's experience was different from any other driver's experience.

Moreover, the bulk of Plaintiffs' complaints regarding paperwork, waiting times and meeting with supervisors relate to the use and implementation of the exception log and extra work log beginning with the 2015-16 school year to the present. See, e.g., Doc. 30 at p. 14 (drivers "wait to have a turn to write-in on the exception log or the extra work log;" "they wait . . . for their manager to approve their time"); (because of exception log, "Drivers had to go to the office daily and wait to have a turn to record their time entries for assigned routes and non-driving tasks"); ("Waiting to use the Exception Log Book is extensive."), p. 19 (using exception log "is usually a fruitless exercise"). Such claims concerning the exception log are not applicable to any of the proposed class members for the period between 2011 and the time of its implementation in 2015-16.

Plaintiffs have not adequately explained or defined the proposed class to account for changes in the process for reporting additional time, nor have they adequately explained how the blend of class members who used the prior DBR process and the current exception log process results in common questions that predominate for the proposed class. Any asserted common questions concerning the exception log would not predominate for the broadly defined class, particularly those former class members who were never subject to any exception log requirements. Further, there is a suggestion that even the exception log process changed during the proposed class period. See Doc. 33 at p. 7 ("eight copies of the log available to drivers");

Doc. 34 at p. 6 ("They mention the number of Exception Logs there are *now*, but not that there was *only one* until this year."). As a result, there are individualized inquiries specific to apparent different subsets of class members, and to individuals within those subsets, all of which demonstrate that the proposed class is not sufficiently cohesive to satisfy the Rule 23(b)(3) predominance requirement.

### b. Superiority

The superiority requirement tests whether "class litigation of common issues will reduce litigation costs and promote greater efficiency." Valentino v. Carter-Wallace, Inc.*,* 97 F.3d 1227, 1234 (9th Cir. 1996). "If each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually a class action is not superior." Zinser v. Accufix Research Institute, Inc.*,* 253 F.3d 1180, 1192 (9th Cir. 2001). As the Court find that Plaintiffs have not met their burden to establish commonality, typicality and predominance, a class action would not be a superior method for resolving this litigation.

## IV. CONCLUSION AND ORDER

Having carefully considered the parties' submissions and the entire record in this case, Plaintiffs' Motion for Class Certification is HEREBY DENIED.

A telephonic status conference is SET for **August 3, 2017, at 9:00 a.m. in Courtroom 8 (BAM) before Magistrate Judge Barbara A. McAuliffe.** The parties should be prepared to discuss the status and scheduling of this litigation, and may appear at the conference with each party using the following dial-in number and passcode: **dial-in number: 1-877-411-9748; passcode: 3190866**.

IT IS SO ORDERED.

Dated: **July 14, 2017**          /s/ *Barbara A. McAuliffe*
                                  UNITED STATES MAGISTRATE JUDGE